[Civ. No. 32264. First Dist., Div. Three. July 10, 1974.]

FURMAN S. SWETT et al., Plaintiffs and Respondents, v.
GRIBALDO, JONES & ASSOCIATES, Defendant and Appellant.

COUNSEL

Spaeth, Blase, Valentine & Klein, Farella, Braun & Martel, John S. Martel and Jon F. Hartung for Defendant and Appellant.

Lee H. Cliff, Gary Morrison and Hall, Henry, Oliver & McReavy as Amici Curiae on behalf of Defendant and Appellant.

Robert O. Wilhelm, Melvin B. Gross and Wilhelm, Hanson, Olson & Bass for Plaintiffs and Respondents.

OPINION

**DRAPER, P. J.**—A developer, not joined in this action, acquired a sizeable tract of land. By substantial cutting and filling performed in 1963

and 1964, it was prepared for subdivision into more than 200 lots, a number of which developer sold, although it does not appear whether homes were built thereon before or after sale. In March 1967, plaintiffs bought a home built on one of these lots. In the fall, cracks became noticeable. The damage became progressively worse. Ultimately, the damage was such that repair was economically unfeasible. Plaintiffs brought this action only against the lender who had financed the development and the soils engineer. Neither the developer, the consulting general engineer, the grading contractor nor the general contractor was joined. The lender apparently settled the claim against it, and the case was tried only as against the soils engineer. The jury was instructed upon strict product liability, express warranty, and negligence. Verdict and judgment were for plaintiffs, and defendant soils engineer appeals.

 ■  The instruction imposing strict product liability upon the engineer substantially directed a verdict against appellant. As against the developer, such instruction could well be entirely proper. The California decision establishing strict products liability (*Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]) imposed that liability upon a manufacturer of goods. Early cases after *Greenman* held its doctrine inapplicable to real property (*Conolley* v. *Bull,* 258 Cal.App.2d 183, 195 [65 Cal.Rptr. 689]; *Halliday* v. *Greene,* 244 Cal.App.2d 482, 485 [53 Cal.Rptr. 267]). More recent decisions, however, have greatly modified this distinction. A leading case (*Kriegler* v. *Eichler Homes, Inc.,* 269 Cal.App.2d 224 [74 Cal.Rptr. 749]), extended the products liability rule to a builder-developer of mass-produced homes for a defectively installed radiant heating system. This decision was cited approvingly by the Supreme Court (*Price* v. *Shell Oil Co.,* 2 Cal.3d 245, 251 [85 Cal.Rptr. 178, 466 P.2d 722]). The developer-vendor has been held liable in other cases concerning sales of homes (*Hyman* v. *Gordon,* 35 Cal.App.3d 769 [111 Cal.Rptr. 262]—defective design in placement of water heater; *Stuart* v. *Crestview Mut. Water Co.,* 34 Cal.App.3d 802 [110 Cal.Rptr. 543]—defective design of water system; *Avner* v. *Longridge Estates,* 272 Cal.App.2d 607 [77 Cal.Rptr. 633]—unstable fill of lot). These decisions strongly indicate that the producer-seller of tract houses, whether he be termed developer, subdivider, or builder, would be liable to plaintiff purchasers under a theory of strict liability.

But defendant-appellant falls into none of these categories. It is a soils engineer. The long-established rule in California is that "those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional

misconduct." (*Gagne* v. *Bertran,* 43 Cal.2d 481, 487 [275 Cal.Rptr. 15].) "The services of experts are sought because of their special skill. . . . Those who hire such persons are not justified in expecting infallibility, but can expect only reasonable care and competence. They purchase service, not insurance." (*Id.,* p. 489.) *Gagne,* although written by the same justice who wrote *Greenman,* preceded the strict liability decision by more than eight years, and its extension to sales of real property by an even longer period. But *Gagne,* which itself dealt with one who tested soil for stability, has been followed in courts which did extend the *Greenman* rule to sales of real property. One such decision (*Allied Properties* v. *John A. Blume & Associates,* 25 Cal.App.3d 848 [102 Cal.Rptr. 259]) was written by the same author for the same court which decided *Kriegler,* the leading case extending the strict products liability rule to a producer of tract houses. Yet it applies the *Gagne* exception to the engineer there sued. The compatability of the rule of strict products liability and the *Gagne* rule is well exemplified in a 1973 decision (*Stuart* v. *Crestview Mut. Water Co., supra,* 34 Cal.App.3d 802). That decision held the strict liability rule applicable to the developer of a tract who had installed a water system assertedly defective in design, but ruled that the designing engineer, under *Gagne,* was not subject to strict liability.

Appellant here was an engineering firm employed solely in an advisory capacity and paid by the hour. It had no interest in the property and did not participate in any way in its sale. We hold that, as in *Gagne,* it is not liable in the absence of negligence or intentional misconduct.

■ This holding largely disposes of the claim of express warranty. Moreover, the evidence conclusively negates an express and unqualified guaranty by appellant. Appellant's report of March 6, 1964, specifically referred to lots 16-20 of block 3 (respondents' home is on lot 20 of this block) and said "It should be pointed out that excavation on these lots for residence construction . . . may endanger the stability of the embankment. It is imperative, therefore, that any proposed construction on the five subject lots be reviewed by this office for approval and/or modification." Appellant's "Final Report of Grading Operations," dated July 15, 1964, pointed out: "This certification . . . does not include any finish lot grading which may have been (or may be) required for residential construction." The report specified the filled lots, including that now owned by respondents, and said "The lots are hereby certified complete to rough grade and are now ready for final lot grading and/or residential improvements. Any such grading required, and of course the residential foundation construction itself, must be made in accordance with the requirements of our Soil Investigation Report, or acceptable methods, approved in writing by this office." It is undisputed that appellant was at no time consulted as

to further grading or excavation upon respondents' lot, never had the opportunity to approve foundations for the house thereon and never was shown the plans for final grading or foundations. There is undisputed evidence that grading of this lot, changing its slope and nature, did occur after the "final report" and in preparation for construction of respondents' home.

■ There remains the issue of negligence, as to which the jury was also instructed. Even if there were some substantial evidence of negligence, we have no way of determining whether the jury based its verdict upon that theory or upon one of the theories of strict liability, and error in the latter instructions would seem prejudicial. But evidence of negligence is lacking. Although several experts testified, none even suggested any failure by appellant to exercise the standard of care of soils engineers. Respondents belatedly point to evidence of their expert that FHA regulations suggest a compaction test for every 500 yards of fill. Respondents argue that "elementary mathematical computation" shows that some 4,000 yards of fill was placed upon their lot, as to which but three compaction tests were performed. We cannot agree that the computations are elemental or within the capability of laymen generally. In any event, the very testimony upon which respondents rely for the fixing of a minimum number of tests is that there is no "attempt to make samplings of every so often as you come up with the fill or every fill or every lot. . . . The location is left, I think, pretty well to the technician in the field." No witness even suggested any possible causal connection between the number of tests and the ultimate instability of the lot. Respondents' attempt to suggest a standard of care requiring a minimum number of tests for this one lot among the more than 200 thus fails.

It is apparent from the brief as a whole that the real argument is that the soils engineer is strictly liable. As already pointed out, we cannot agree. The appellant is a professional, employed as were the engineers in *Gagne, Allied Properties,* and *Crestview,* to make tests and to give professional advice as to what they showed. Thus his duty was to conform to the standards of his profession. Those standards are amply set forth in the testimony of experts, but there is no evidence that appellant failed to comply fully with them. Thus there is no showing of negligence upon appellant's part. Unlike the developer, "manufacturer" or seller, it did not guarantee a result, and, absent some showing of negligence, is not liable.

Judgment reversed.

Brown (H. C.), J., and Devine, J.,* concurred.

A petition for a rehearing was denied August 9, 1974, and respondents' petition for a hearing by the Supreme Court was denied September 5, 1974.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.