[No. A010448. First Dist., Div. Two. Aug. 16, 1984.*]

FLORENCE C. HUANG et al., Plaintiffs and Appellants, v.
KEITH E. GARNER et al., Defendants and Appellants;
FRANK X. CONNELLY et al., Defendants and Respondents.

**[Opinion certified for partial publication.†]**

---

*This opinion initially bore the file date of June 21, 1984. On August 16, 1984, the court vacated its opinion and ordered it reissued on August 16, 1984.

†See footnote 1, *post,* page 409.

**COUNSEL**

Mullins, Wise & Dickman and Norbert J. Dickman for Plaintiffs and Appellants.

Misuraca, Beyers & Costin and James L. Beyers for Defendants and Appellants.

Royce & Hayden and F. John Royce for Defendants and Respondents.

**OPINION**

**KLINE, P. J.—**

### STATEMENT OF THE CASE[1]

Plaintiffs Florence C. Huang and Sheila C. Huang commenced this action on July 8, 1975, by filing a "Complaint for Rescission and Restitution and Other Relief Re Purchase of Real Property." The complaint stated numerous causes of action based upon the purchase by plaintiffs on August 1,

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV and V, and part of the conclusion.

1974, for the sum of $1,205,000 of the Caroline Apartments which they alleged had been defectively designed and constructed.[2] Plaintiffs named as defendants the real estate brokers involved in the transaction, the sellers of the property, various lenders, intermediate owners of the property and the original owner/developer of the property, defendant Keith E. Garner and his wholly owned construction company defendant Encinal Park Inc., as well as the building designer for the project, defendant Stanley Mattson, and the project's civil engineer, defendant Frank Connelly.

Prior to the beginning of trial, plaintiffs settled with all parties except defendants Garner, Encinal Park Inc., Connelly, and Mattson. The case proceeded to trial against these remaining defendants on the theories of strict liability, negligence and implied warranty. Trial commenced on June 3, 1980, and lasted through June 30, 1980, at which time the jury returned a verdict in favor of plaintiffs and against defendants Garner and Encinal Park, Inc., in the amount of $40,300.

Following resting of the plaintiffs' case, defendants made various motions for nonsuit. The court granted a nonsuit on all theories of liability as to defendants Mattson and Connelly.[3] With respect to defendants Garner and Encinal Park, Inc. a partial nonsuit was granted as to negligence and strict liability claims, the court refusing to allow economic damages and limiting recovery to physical damage only. A complete nonsuit was granted as to the breach of warranty theory against Garner and Encinal Park, Inc., the court determining that the absence of privity between plaintiffs and defendants precluded such action.

The judgment of nonsuit was entered by the court on July 3, 1980. Notice of entry of judgment was mailed on July 7, 1980.

Following the verdict, defendants Garner and Encinal Park, Inc. moved for judgment notwithstanding the verdict and for a new trial, which motion was denied by order of the court on August 15, 1980. On September 2, 1980, those defendants filed their notice of appeal from the jury verdict. Also on September 2, 1980, plaintiffs filed their notice of appeal from the

---

[2]Allegations of the complaint also included those of fraud, intentional misrepresentation, implied warranty, negligence, defective design and construction, mutual mistake, conceal-ment and suppression of fact, rescission and restitution, and common counts.

[3]The nonsuit on behalf of defendants Mattson and Connelly was granted primarily on the ground that there was no competent evidence on the issue of professional malpractice as no evidence had been presented that the conduct of these defendants violated the standard of care in the relevant community. The trial court also determined that no cause of action for strict liability could be maintained against Mattson and Connelly and that in the absence of privity between plaintiffs and these defendants, no action for implied warranty could be established.

judgment granting nonsuit to defendants Connelly and Mattson. On September 8, 1980, plaintiffs filed a notice of cross-appeal against that part of the court's ruling denying them economic damages and limiting damages against Garner and Encinal Park, Inc. to purely physical damages.

## FACTS[4]

The subject real property, known as the Caroline Apartments, was constructed in 1965 on land owned by defendant Garner. The project was constructed by his wholly owned construction company, Encinal Park, Inc. Garner hired building designer Mattson to prepare plans for the project. Mattson retained the services of civil engineer Connelly to do the structural engineering. The apartments were constructed in 1965, the final inspection taking place in December 1965. Evidence was presented by the plaintiffs to the effect that the plans and specifications for the building were defective in several ways, including insufficient fire retardation walls, insufficient shear walls and inadequate structure, many of these claimed defects alleged to be in violation of the 1961 Uniform Building Code. Additional evidence indicated that deviation from the building plans during construction also contributed to faulty construction.

Garner continued to own the building until December 1970, at which time he sold it to Robert and Deanna Bartels. Bartels then sold the property to the Piper Banning Group which, in turn, sold to plaintiffs Florence and Sheila Huang in 1974. Upon purchase of the property the Huangs hired engineer Charles Philips to conduct an engineering study to determine what actions would need to be taken prior to converting the apartments to condominiums. Philips discovered extensive structural damage in the garage area of the apartments. This led to the discovery of other purported structural and design defects in the property. During the trial extensive testimony was presented regarding the nature and extent of the damages by plaintiffs' expert witness Philips, who also testified as to the projected costs to repair the building and to bring it up to code requirements.

## DISCUSSION

I. *Whether it was error for the trial court to grant the motion for nonsuit as to defendants Mattson and Connelly.*

Plaintiffs contend that it was error for the trial court to grant a nonsuit as to defendants Mattson and Connelly, arguing that there was competent ex-

---

[4]The brief summary of the facts here set forth is amplified later where relevant to the discussion of specific issues.

pert testimony before the trial court as to the issue of standard of care; that the evidence supported a finding of negligence per se due to the several violations of the 1961 Uniform Building Code; that there was sufficient evidence to warrant application of the doctrine of res ipsa loquitur; and that the trial court erred in refusing to allow plaintiffs to reopen their case following its grant of nonsuit. ■■■ Careful review of the record persuades us that the evidence regarding violations of the Uniform Building Code was sufficient to allow the case to go to the jury upon an instruction as to negligence per se. ■■■ It was also error for the court to deny plaintiffs' request to reopen their case to provide testimony on the standard of care in the community.

The California Supreme Court has recently reiterated the standards applicable to review of a motion for nonsuit under Code of Civil Procedure section 581c. (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112 [184 Cal.Rptr. 891, 649 P.2d 224].) ■■■ "A motion for nonsuit is a procedural device which allows a defendant to challenge the sufficiency of plaintiff's evidence to submit the case to the jury. [Citation.] Because a grant of the motion serves to take a case from the jury's consideration, courts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper. ■■■ The rule is that a trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor. [Citations.] [¶] ■■■ In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s]evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . .' (*Elmore* v. *American Motors Corp.* [(1969)] 70 Cal.2d 578 at p. 583.)" (*Campbell* v. *General Motors Corp., supra,* at pp. 117-118.)

■■■ ■■■ Plaintiffs argue that there was sufficient competent evidence on the issues of negligence and negligence per se to render erroneous the court's dismissal of the action as to Mattson and Connelly.[5]

---

[5]With respect to plaintiffs' causes of action for implied warranty and strict liability, it is clear that the grant of nonsuit was correct. "[T]he well settled rule in California is that where the primary objective of a transaction is to obtain *services,* the doctrines of implied warranty and strict liability do not apply (cf. *Carmichael* v. *Reitz* [1971] 17 Cal.App.3d 958 . . .). . . '. . . Thus the general rule is applicable that those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct.'" (*Allied Properties* v. *John A. Blume & Associates* (1972) 25 Cal.App.3d 848, 855-856 [102 Cal.Rptr. 259].) "This rule has been consistently followed in this state with respect to professional services. [Citations.]" (*Id.,* at p. 856, and cases there cited; see also *Swett* v. *Gribaldo, Jones & Associates* (1974) 40 Cal.App.3d 573, 576 [115 Cal.Rptr. 99].)

██ Initially, we agree with the trial court that as a general proposition proof of professional negligence requires testimony of experts as to the standard of care in the relevant community. (*Allied Properties* v. *John A. Blume & Associates, supra,* 25 Cal.App.3d at pp. 857-858; *Swett* v. *Gribaldo, Jones & Associates, supra,* 40 Cal.App.3d at p. 576; see BAJI No. 6.37.) ██ Despite lengthy testimony by plaintiffs' expert Charles Philips regarding the respects in which the design and engineering of the building did not comply with the Uniform Building Code and the asserted "defects" in design and engineering, no testimony was presented as to the standard of care in the relevant community.[6] The testimony from defense witness Anderson that failure to include engineering calculations on the plans would be a departure from common practice does not constitute such expert testimony. Nor do we believe that the alleged negligence in the design of the building and the structural engineering calculations were such that they were within the common knowledge of laymen. (*Allied Properties* v. *John A. Blume & Associates, supra,* 25 Cal.App.3d at p. 858.) "The voluminous record indicates that the standard of care and the complex calculations required were exclusively within the knowledge of experts . . . ." (*Ibid.*; *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 156 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].)

Nevertheless, we believe that the trial court erred in granting the nonsuit as to plaintiffs' claim of negligence against Connelly and Mattson. Plaintiffs presented evidence that the building design of Mattson and the structural engineering of Connelly did not satisfy the requirements of the Uniform Building Code. Under Evidence Code section 669 proof of a statutory violation entitles the plaintiff to an instruction on the presumption of negligence where the plaintiff is within the class of persons for whose protection the statute or ordinance was adopted.[7] "The negligence per se doctrine actually relates to the burden of proof, and has long been recognized in California. (*Alarid* v. *Vanier* [1958] 50 Cal.2d 617, . . .) In 1967, it was included in the Evidence Code, section 669. Subdivision (a) of section 669 provides: 'The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The

---

[6] It is of course recognized that the relevant community for building designers and civil engineers may in fact be the profession as a whole.

[7] BAJI No. 3.45 (1983 rev.) is the current instruction on negligence per se. It provides: "If you find that a party to this action violated _____, the [statute] [ordinance] [safety order] just read to you [and that such violation was a [proximate] [legal] cause of injury to another or to himself], you will find that such violation was negligence [unless such party proves by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. In order to sustain such burden of proof, such party must prove by a preponderance of the evidence that he was faced with circumstances which prevented compliance or justified noncompliance with the [statute] [ordinance] [safety order]."

violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.' [¶] ■ If the four elements set forth above are established, a presumption of negligence arises and the burden of proof shifts to the defendant to persuade the trier of fact that he 'did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances . . .' (Evid. Code, § 669, subd. (b); see also *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 765 . . . , which involved violations of swimming pool regulations.)" (*Cade* v. *Mid-City Hosp. Corp.* (1975) 45 Cal.App.3d 589, 596-597 [119 Cal.Rptr. 571].) "How the four elements of section 669 are considered is the subject of Law Revision Commission comment following that section in the Evidence Code. The last two elements are determined by the trial court as a matter of law, since they involve statutory interpretation [citation], while the first two elements are regarded as factual matters to be determined by the jury." (*Ibid.*)

■ In the instant case the court must have determined that the Uniform Building Code was intended to protect the class of persons of which plaintiffs were members and that it was designed to prevent the type of injury which occurred, as the court gave this instruction with respect to defendants Garner and Encinal Park, Inc. We think it reasonable to conclude that the Uniform Building Code was designed to prevent the types of defects and damages to construction which occurred in this case. We also believe that subsequent purchasers as well as tenants were among those intended to be protected by the code.

Defendants Mattson and Connelly contend, without citation of authority, that the instruction would be inapplicable in professional negligence cases where expert testimony as to the standard of care is required.[8] However, cases in California and elsewhere have allowed the negligence per se doctrine to operate in the professional negligence context. (*Landeros* v. *Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389]; *Derrick* v. *Ontario Community Hospital* (1975) 47 Cal.App.3d 145 [120 Cal.Rptr. 566]; see also, *Burran* v. *Dambold* (10th Cir. 1970) 422 F.2d 133; cf. *Cade* v. *Mid-City Hosp. Corp., supra,* 45 Cal.App.3d 589.) In *Landeros* v. *Flood, supra,* 17 Cal.3d 399, which reversed an order sustaining general demurrers to the plaintiff's complaint, the court held that Penal Code sections requiring doc-

---

[8]Although plaintiffs did not argue in their motion for nonsuit that negligence per se was an independent theory supporting the denial of the nonsuit, they repeatedly throughout the trial presented evidence and argued that the Uniform Building Code established the standard of care and that the violations of the Building Code constituted negligence.

tors and hospitals to report certain injuries indicating child abuse to authorities established the standard of care insofar as Evidence Code section 669 was concerned. The plaintiff was therefore entitled to prove that each of the four statutory conditions for invoking the presumption of lack of due care was met, which, if accomplished, would shift to defendants the burden of rebutting that presumption. (*Id.,* at pp. 413-414.) In *Derrick* v. *Ontario Hospital, supra,* 47 Cal.App.3d 145, the Court of Appeal reversed the trial court's dismissal of the action following the grant of demurrers to the complaint. The court agreed with the plaintiffs that the hospital owed them a duty of care based on section 3125 of the Health and Safety Code, which requires various hospital personnel and employees to promptly report to the local health officer a patient's contagious, communicable disease. (*Id.,* at p. 151.) Although the court in *Cade* v. *Mid-City Hosp. Corp., supra,* 45 Cal.App.3d 589, held that the trial court was not required to instruct on negligence per se where the plaintiff had not shown that the injury which occurred was the type of injury the statute was designed to prevent, the court nevertheless recognized that had the four elements of Evidence Code section 669, subdivision (a), been established by the plaintiff, an instruction on negligence per se would have been proper with respect to the defendant hospital.

Although no California case has been found which applies the statutory presumption of negligence to a professional negligence case outside the context of medical malpractice, there is no reason to limit the presumption strictly to that context. The medical malpractice area is generally conceded to be the model for professional negligence actions generally and the instruction seems to us as applicable to the instant action as it would be to one based on medical malpractice. ▇▇ ▇▇▇▇ At least one other court has held violation of the Uniform Building Code to support an instruction on negligence per se in an action against professional design engineers. (*Burran* v. *Dambold, supra,* 422 F.2d 133.)[9]

▇▇▇ We recognize that testimony in this case indicated that the code frequently was not followed according to its letter where acceptable alternatives were approved by local building officials. The code itself anticipates an alternative method may be acceptable. (U.B.C., § 105) This does not, however, vitiate the presumption of negligence, but relates to defendants'

---

[9]Of course, where the statute supplies the standard of care expert testimony would not be required. "A central function of the presumption of negligence rule is to affect the standard of care used in determining whether conduct was negligent. Theoretically, the standard under the presumption is that of the relevant statute subject to modification by establishment of sufficient excuse or justification." (Holdych, *The Presumption of Negligence Rule in California: The Common Law and Evidence Code section 669* (1980) 11 Pac.L.J. 907, 914; see also Kohlman, *Malpractice Liability for Failing to Report Child Abuse* (1974) 49 State Bar J. 118.)

ability to rebut the presumption by evidence that they performed in a manner which might reasonably be expected of a person of ordinary prudence under similar circumstances. (See Evid. Code, § 669, subd. (b).)

■ ■ ■ ■ ■ We conclude that the nonsuit as to defendants Mattson and Connelly on the issue of negligence was improper as expert testimony was not required where the Uniform Building Code could establish the standard of care and where evidence of violation of that code would give rise to a rebuttable presumption of negligence.[10]

■ This conclusion is independently compelled for the additional reason that the trial court refused to allow plaintiffs to reopen their case to present further testimony (through expert witness Charles Philips) as to the standard of care in the relevant community for professionals such as Mattson and Connelly. Following argument on the motion for nonsuit, during which plaintiffs' attorney contended that the testimony already presented was sufficient to establish the standard of care, the trial court granted the motion for nonsuit. Counsel for plaintiffs then immediately requested the court allow him to reopen so that he might present testimony by Charles Philips as to this relevant standard of care. The court peremptorily denied this request.

■ It is clear that "[a]fter a motion for nonsuit is made in a jury trial (Code Civ. Proc., § 581c), it is the trial court's duty, if so requested, to permit the plaintiff to reopen his case and introduce further evidence, since one of the objects served by the motion is to point out the oversights and defects in the plaintiff's proof so that he may supply, if possible, the specified deficiencies. [Citation.] It is error to refuse plaintiff this privilege and, after such refusal, to grant a motion for nonsuit. [Citations.]" (*Charles C. Chapman Building Co.* v. *California Mart* (1969) 2 Cal.App.3d 846, 858 [82 Cal.Rptr. 830]; see also CJER, Cal. Judges Benchbook, Civil Trials, § 9.79, p. 314; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 364, pp. 3160-3161.)

■ Recognizing those cases which hold it error to refuse a request to reopen prior to the grant of a nonsuit (see, e.g., *Low* v. *Warden* (1886) 70 Cal. 19 [11 P. 350]; *Sferlazzo* v. *Oliphant* (1914) 24 Cal.App. 81 [140 P.

---

[10]We have not addressed plaintiffs' contention that the doctrine of res ipsa loquitur should have prevented the nonsuit. Our review of the record leads us to determine that res ipsa loquitur is inapplicable in this case. The theory was never argued below and certain requirements of the doctrine (e.g., that the injury be the type which ordinarily does not occur in the absence of someone's negligence and that the agency or instrumentality causing the injury be in the exclusive control of the defendant) were not met in this case. (Cf. *Duncan* v. *Queen of Angels Hospital* (1970) 11 Cal.App.3d 665 [90 Cal.Rptr. 157].)

289]; *Eatwell* v. *Beck* (1953) 41 Cal.2d 128 [257 P.2d 643]), defendants Mattson and Connelly argue that this case is distinguishable as the request to reopen was made after the court grant of the nonsuit. Defendants rely upon *Onick* v. *Long* (1957) 154 Cal.App.2d 381 [316 P.2d 427], as support for this position. In *Onick,* defense counsel moved the day after the grant of the nonsuit to reopen the case to present an additional witness. No affidavit was filed in support of the request and no other showing was made by counsel to explain the delay in producing the witness. The court recognized that had the witness been produced "and his evidence offered after the motion for nonsuit was argued and before the court acted on it the denial of such offer might well have been error. [Citation.] But where a party has rested, and after a nonsuit has been granted on a subsequent day seeks to reopen his case, in the absence of a showing of reasonable grounds for the delay in offering the witness we are satisfied that the trial court commits no abuse of discretion in refusing to permit the reopening of the case to allow such testimony to be introduced out of order. [Citations.]" (*Id.*, at p. 388.)

In *John Norton Farms, Inc.* v. *Todagco* (1981) 124 Cal.App.3d 149 [177 Cal.Rptr. 215], a nonsuit was granted following plaintiff's opening statement. The court recognized that the plaintiff should ordinarily be given an opportunity after the motion is made to modify or add to his opening statement. Nevertheless, the court ruled that the nonsuit was not an abuse of discretion where the record indicated "that after the motion for nonsuit was argued by all counsel and the court indicated it was about to rule on the motion, plaintiff never asked for an opportunity to modify or add to his opening statement. Therefore, the cautionary rule (that suggests that in keeping with the object of the nonsuit procedure, the plaintiff should ordinarily be given an opportunity, after the motion is made, to modify or add to it) is inapplicable to the case at bench. [Citation.]" (*Id.*, at p. 162.) There is no indication in *John Norton Farms, Inc.* that counsel immediately requested that the court allow him to reopen nor, indeed, that there was ever any request by counsel to reopen. Moreover, the court in that case had indicated it was about to rule on the motion. In the instant case there appears to be no such clear indication. More importantly, in this case the request to reopen did not come the day following the grant of the nonsuit, as it did in *Onick,* but occurred at the hearing itself moments after the verbal grant of the nonsuit by the court. The request to reopen came so closely on the heels of the court's ruling as to be nearly simultaneous. Plaintiffs' counsel had argued at the hearing that witness Philips' testimony had been sufficient to satisfy the requirements of expert testimony as to the standard of care in the community and that the defendant's conduct fell below that standard. We believe that this case is significantly different from *Onick* and *John Norton Farms, Inc.* in these respects. We sympathize with the trial judge who in the fourth week of a lengthy and complicated trial was faced with a

motion to reopen plaintiffs' case. However, we believe that the additional testimony by expert witness Philips would not have unduly extended the trial, particularly in light of the draconian effect of nonsuit.

In this situation, we believe that the trial court abused its discretion in failing to grant plaintiffs' motion to reopen for the limited purpose of presenting additional testimony by witness Philips as to the standard of care of building designers and engineers in the relevant community. ▮ We believe, as well, that this error was prejudicial to the plaintiffs. ▮ "[A]ny error in refusing to allow appellant to reopen the case and present further evidence must be prejudicial to warrant reversal [citations], and appellant has the burden of establishing prejudicial error. [Citations.]" (*Charles C. Chapman Building Co.* v. *California Mart, supra,* 2 Cal.App.3d 846, 858-859; *Cacciaguidi* v. *Elliot* (1974) 39 Cal.App.3d 261 [114 Cal.Rptr. 93]; *Greene* v. *Atchison T. & S. F. Ry. Co.* (1953) 120 Cal.App.2d 135, 144 [260 P.2d 834, 40 A.L.R.2d 873].)

▮ Those cases which uphold the court's denial of a motion to reopen following grant of a nonsuit on the grounds that there was no prejudice in denying a motion to reopen rely upon the fact that the additional evidence sought to be produced by plaintiff would be immaterial to the issues involved (*Greene* v. *Atchison T. & S. F. Ry. Co., supra.*) or would not render defendants liable as a matter of law. (*Charles C. Chapman Building Co.* v. *California Mart, supra,* 2 Cal.App.3d 846.) Such cases have no application to the situation here.

Assuming that witness Philips testified specifically as to the standard of care for building designers and engineers in the relevant community, and that he further testified that Mattson's and Connelly's actions fell below such standards, he would have undercut the court's rationale for granting nonsuit.

For the foregoing reasons, we conclude that in the circumstances the grant of nonsuit as to defendants Mattson and Connelly was a prejudicial abuse of discretion by the court.

II. *Whether the court erred in granting a partial nonsuit as to defendants Garner and Encinal Park, Inc.*

Plaintiffs contend that the trial court erred in granting a complete nonsuit as to defendants Garner and Encinal Park, Inc. with respect to plaintiffs' warranty cause of action and a partial nonsuit as to plaintiffs' claims for economic damages with respect to those defendants.

██  We have concluded that the trial court erred in limiting damages in the negligence cause of action only to physical injury to property.  ██  Because we cannot determine whether the jury verdict in favor of plaintiffs rested upon strict liability or negligence claims and because economic damages were recoverable in the negligence cause of action only, we must remand for retrial of both strict liability and negligence claims, rather than merely for a retrial of damages as requested by plaintiffs.

A. *Nonsuit as to warranty claim.*

██  Preliminarily, we have determined that the court's grant of a nonsuit with respect to plaintiffs' claim for implied warranty is correct. The court granted the nonsuit as to the warranty cause of action on the ground that implied warranty requires privity and that no evidence of implied warranty was presented. "It is settled law in California that privity between the parties is a necessary element to recovery on a breach of an implied warranty of fitness for the buyer's use, with exceptions not applicable here. (*Burr* v. *Sherwin Williams Co.* (1954) 42 Cal.2d 682, 695-696 . . . .)" (*Anthony* v. *Kelsey-Hayes Co.* (1972) 25 Cal.App.3d 442, 448 [102 Cal.Rptr. 113].) *Anthony* v. *Kelsey-Hayes Co., supra,* held that a demurrer was properly sustainable to a cause of action based upon breach of an implied warranty where lack of privity between plaintiff and defendant was disclosed on the face of the complaint. (*Ibid.*) Similarly, nonsuit to the implied warranty claim is proper where there is no contention of privity between the parties.

Plaintiffs' reliance upon *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], as support for the proposition that privity is no longer a requirement in the implied warranty context, is unavailing. *Biakanja* was not an action in implied warranty, it was rather an action in negligence. The court characterized the principal question there as "whether defendant was under a duty to exercise due care to protect plaintiff from injury and was liable for damage caused by plaintiff by his negligence even though they were not in privity of contract." (*Id.,* at p. 648.) We have been referred to no case in this state, nor have we found any, which eliminates the privity requirement in a cause of action for implied warranty.

B. *Partial nonsuit as to claims for economic loss in plaintiffs' strict liability and negligence causes of action.*

██  Plaintiffs sought recovery for physical damages to their property including damages to the structure caused by deflected and cracked beams and dry rot damages to the balcony area. Plaintiffs also sought recovery of economic losses including the cost to repair firewalls, shear walls, fire

stops, and other alleged defects in the structure which had not caused actual physical damages at the time of trial. In granting defendants Garner and Encinal Park, Inc.'s motion for nonsuit with respect to economic damages, the court agreed with defendants that economic losses were not recoverable on strict liability and negligence theories. It therefore instructed the jury accordingly.[11]

Apparently it was agreed by the parties that damages such as the cost to repair allegedly insufficient shear walls, insufficient fire retardation, and defects in the structure which did not cause actual physical damage were in fact economic damages. In *States Steamship Co.* v. *Stone Manganese Marine, Ltd.* (D.N.J. 1973) 371 F.Supp. 500, the court described economic loss as "marked by the loss of the benefit of the bargain for the goods purchased, lost profits, and replacement costs for ineffective goods. Physical damage to property and personal injury, however, are not considered to be 'economic loss.'" (*Id.*, at p. 504.) Although the line between economic loss and recoverable physical property damage is not always easy to draw (see Note, *Economic Loss in Products Liability Jurisprudence* (1966) 66 Colum.L.Rev. 917), it is undisputed in this case that the court properly drew the line between economic and physical damages, determining the cost to repair structural and other alleged defects which had not actually caused physical damage to be economic damage.

Although we conclude that the trial court correctly ruled that economic damages were not recoverable on plaintiffs' strict liability cause of action, it appears to us that the California Supreme Court in *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60], changed the traditional rule of nonrecovery of economic loss in negligence actions, provided that the plaintiff is able to prove that the risk of harm was reasonably foreseeable and was closely connected with the defendant's conduct and that the damages were not wholly speculative, nor the injury part of the plaintiff's ordinary business risk. (See *Pisano* v. *American Leasing* (1983) 146 Cal.App.3d 194 [194 Cal.Rptr. 77].)

---

[11]In pertinent part the instruction was as follows: "In this type of action, there can be no monetary recovery for economic or commercial loss only. [¶] I will read to you what 'economic' and 'commercial' loss are. [¶] Commercial loss has been frequently referred to as damages for inadequate value, cost of repair and replacement of a defective product or consequent loss of profit. [¶] The law has changed a little since this was written, so where I put the period is not where it used to be. The law now allows cost of repairs for any actual damage not just to correct the condition that did not involve damage. [¶] What I am talking about now is fire walls and things of that nature. No fire occurred. They cannot recover against that in this cause of action. [¶] . . . So, here, you can only concern yourselves with the actual physical damages which had been caused. They will consist of any actual physical damage. There may be others, but I will give you an example. Water damage, termite damage, buckled and cracked beams, tilted decks, those are examples of such things. There may be some others that I have overlooked in reciting them to you."

Defendants Garner and Encinal Park rely upon *Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9 [45 Cal.Rptr. 17, 403 P.2d 145], and *Anthony* v. *Kelsey-Hayes Co.*, *supra*, 25 Cal.App.3d 442, in arguing that plaintiffs cannot recover damages for economic losses allegedly sustained as a result of defective construction of the building under either product liability or negligence theories. In *Seely*, the California Supreme Court limited recovery in negligence and strict liability tort actions to damages for personal injuries and to physical damages to plaintiff's property. (*Id.*, at pp. 16-17.) The court expressly refused to allow recovery for economic losses alone. (*Ibid.*; see *Pisano* v. *American Leasing, supra*, 146 Cal.App.3d 194, 196-197, and cases there cited.) In *Anthony* the Court of Appeal, relying upon *Seely*, denied plaintiffs damages for economic loss, affirming the trial court's sustaining of a demurrer to strict liability and negligence causes of action. In so doing, the court stated: "In California, the only kinds of damages caused by negligence which may be recovered from a defendant not in privity with plaintiff are for bodily injury and physical damage. [Citations.] The depreciation claimed here is not due to physical property damage. As for loss of use, it too does not flow from compensable physical property damage. Here there is no claim for loss of profits based upon intended commercial use of the vehicles as in *Seely*. In fact only an indefinite possible loss flowing from a loss of use is pleaded. In actions sounding in negligence, the cause of action matures only when actual damage results from the negligent act. [Citation.] In actions bottomed on negligence, there is no recovery against a manufacturer for economic loss alone. [Citation.]" (*Id.*, 25 Cal.App.3d at pp. 446-447.)[12] With respect to the claim for strict liability the *Anthony* court stated, "In *Seely* v. *White Motor Co., supra*, 63 Cal.2d 9, 16-19, the court indicated that defects in the quality of goods (loss of bargain) and economic losses (loss of use of truck resulting in business loss) were not recoverable from the manufacturer under the theory of strict liability, but that these types of losses should be relegated to the law of contracts (sales) governing commercial transactions, i.e., to express and implied warranties. We realize that the authorities in the various jurisdictions are not uniform in this regard (see Prosser, Torts (4th ed. 1971), *supra*, pp. 666, 667), but we feel constrained to be governed by the views set forth in the *Seely* majority opinion." (*Anthony* v. *Kelsey-Hayes Co., supra*, at p. 447; see also *Charles D. Warner & Sons, Inc.* v. *Seilon, Inc.* (1974) 37 Cal.App.3d 612, 618, fn. 4 [112 Cal.Rptr. 425].)

Since *Seely*, a line of cases has arisen distinguishing in negligence actions the ability to obtain economic damages in cases involving malpractice lia-

---

[12]The *Anthony* court avoided characterizing the claim for cost of inspections, repairs, and replacements as economic loss as it determined that because defendant had already replaced those parts, the claim was no longer applicable. (*Id.*, at p. 446.)

bility of professionals for negligence in the rendition of services from that of manufacturers for product defects. (See *Cooper* v. *Jevne* (1976) 56 Cal.App.3d 860, 868 [128 Cal.Rptr. 724]; *Biakanja* v. *Irving, supra,* 49 Cal.2d 647; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685]; *Heyer* v. *Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161]; *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674].) In *Cooper* v. *Jevne, supra,* 56 Cal.App.3d 860, the court held that subsequent purchasers of condominiums could maintain an action for professional negligence against architects who assertedly failed to exercise ordinary care as architects to avoid reasonably foreseeable injury to condominium purchasers. The court allowed plaintiffs to maintain their claim for economic loss alone where the purchasers met the test enunciated in the *Biakanja* v. *Irving, supra,* 49 Cal.2d at page 650, for determining when the privity requirement would be relaxed in negligence actions. It is not argued that the case against Garner and Encinal Park, Inc. is one for professional negligence. Rather, it is apparently conceded that developer Garner and his wholly owned corporation Encinal Park, Inc. stand in the position of a manufacturer or supplier of products. (See *Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749]; *Kasel* v. *Remington Arms Co.* (1972) 24 Cal.App.3d 711, 724 [101 Cal.Rptr. 314]; *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 30 [27 Cal.Rptr. 689, 377 P.2d 889].)

However, our Supreme Court in *J'Aire Corp.* v. *Gregory, supra,* 24 Cal.3d 799, has allowed recovery of economic loss to extend beyond the area of professional negligence in the rendition of services, by permitting plaintiffs to recover economic losses in actions for negligent interference with prospective economic advantage where a "special relationship" exists between the parties as described in *Biakanja* v. *Irving, supra,* 49 Cal.2d 647. (*J'Aire Corp.* v. *Gregory, supra,* 24 Cal.3d at p. 804; see *Chameleon Engineering Corp.* v. *Air Dynamics, Inc.* (1980) 101 Cal.App.3d 418, 422, fn. 1 [161 Cal.Rptr. 463].) The plaintiff in *J'Aire,* a lessee, sued the defendant general contractor for damages resulting from the delay in completion of a construction project at the location where appellant operated a restaurant. The county had entered into a contract with the general contractor for improvements to the restaurant premises. The Supreme Court reversed the trial court which had sustained a demurrer to the complaint on the ground that economic damages were not recoverable in this negligence action absent privity. The Supreme Court held that "recovery for negligent interference with prospective economic advantage will be limited to instances where the risk of harm is foreseeable and is closely connected with the defendant's conduct, where damages are not wholly speculative and the injury is not part of the plaintiff's ordinary business risk." (*Id.,* 24 Cal.3d at p. 808; see also *Pisano* v. *American Leasing, supra,* 146 Cal.App.3d

194, 197.) The Supreme Court's decision recently has been construed as permitting a plaintiff's claim for commercial losses of lost profits and lost business opportunities. In *Pisano* v. *American Leasing, supra,* the court overturned a grant of summary judgment on issues of economic damages in a negligence action. In that case plaintiffs "sued defendants, the manufacturer, supplier and lessor of a sanding machine plaintiff used in his cabinet making business. Plaintiff alleged that the sander was defective and that it had damaged wooden cabinets he had contracted to construct for Shapell Company. He sought damages for lost profits resulting from Shapell Company's termination of the contract; loss of future business with Shapell Company; loss of prospective clients; additional expenses incurred to repair the cabinets allegedly damaged by the sander; and loss of earnings due to time spent repairing the damaged cabinets." (*Id.,* at p. 196.) In an opinion by Justice Low, relying upon *J'Aire,* the court held that "under his cause of action for negligence, plaintiff may recover not only the cost of repairs to the damaged cabinets, but also for his economic losses so long as he is able to prove the necessary business relationship with defendants." (*Id.,* at p. 197.)

With respect to plaintiff's products liability claim, the court held that plaintiff was entitled to recover only for actual physical damages to the cabinets caused by the defective machine. (*Ibid.*) We agree and do not view *J'Aire* as expanding strict tort liability to encompass recovery for economic damages.

Having determined that plaintiffs were not necessarily foreclosed in their negligence action against defendants Garner and Encinal Park, Inc. from recovering for economic damages, the question remains whether plaintiff in this case has met the criteria set forth in *Biakanja* v. *Irving, supra,* 49 Cal.2d 647, 650, and adopted by the court in *J'Aire* for demonstrating the "special relationship" between the parties required for recovery of economic losses where the parties are not in privity. Stated otherwise, the question is whether we can determine that defendants owed a duty of care to plaintiffs by applying the *Biakanja* criteria. As adopted in *J'Aire,* "[t]hose criteria are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." (24 Cal.3d at p. 804.) We think these criteria are met.

In this case, the developer's duty of reasonable care is logically owed to those who subsequently purchase a housing structure allegedly designed and constructed in a defective manner. (See *Cooper* v. *Jevne, supra,* 56

Cal.App.3d 860, 869.) We believe that duty of reasonable care also extends to subsequent purchasers who do not live in the building, but utilize it for investment purposes. On the evidence before us, we think it reasonable to assume that as a developer of numerous housing projects, Garner intended eventually to sell the apartments and must have foreseen that the property would be purchased by individuals or entities for investment purposes. It was certainly foreseeable that defects in construction of the types asserted by plaintiffs in this case would damage subsequent purchasers of the property as well as subsequent residents. There was testimony presented that the defects in the building are dangerous, despite the fact that for approximately 17 years they have not caused personal injury to any tenant.

Failure to comply with the Uniform Building Code by a developer-contractor involves potential risk of harm to later purchasers. In this case ample evidence was offered with respect to the cost of repairing the subject defects. Thus it is relatively certain that plaintiffs have suffered injury as a result of the defects. Although plaintiffs are not seeking from these defendants losses for inability to convert to condominiums, plaintiffs have nevertheless suffered damages in being forced to repair the building. Indeed, plaintiffs have received a notice of abatement from the City of Menlo Park requiring them to make specified repairs to the structure.[13] Certainly defendants' defective construction of the building directly caused the injuries suffered by plaintiffs. Furthermore, considering the importance of the minimum standards for housing set forth in the pertinent provisions of the Uniform Building Code, the violation of those standards involves sufficient "moral blame" to meet the fifth of the six criteria adopted in *J'Aire*; particularly where, as here, there is no showing that functionally equivalent precautions were alternatively undertaken. Finally, a "policy of preventing future harm" also supports the eligibility to receive economic damages in this case because such a policy inheres in every building code and would be advanced by penalizing a violation thereof.

Defendants argue that the harm in this case actually arose from the inability of plaintiffs to effect a conversion of the property to condominiums, and that such injury was not reasonably foreseeable or attributable to any action by defendants. However, it must be remembered that as against these defendants, plaintiffs were not seeking damages for failure of the conversion. Rather, the damages they sought are the cost to repair the defects in

---

[13]The notice of abatement contained the following specific description of needed repairs: "A. 1. Certain structural members in the garage are likely to fail, or become detached or dislodged, or collapse and therefore injure persons or damage property. [¶] 2. Delapidation and deterioration to the first floor framing caused by interior structure being exposed to rain water."

the structure in order to bring it into compliance with the Uniform Building Code or acceptable alternatives.

Therefore, we conclude that the risk of harm in this case was foreseeable and that injury to plaintiffs' economic interests may legally be compensated if plaintiffs prevail in their cause of action for negligence.

■■■ Although plaintiffs argue that retrial of this case should be limited to the issue of damages only, we are compelled to order retrial on the fundamental issue of liability under strict products liability and negligence theories as well. In those cases cited by plaintiff for approval of retrial limited to damages only it was clear that there was no serious contention that liability had not been determined and damages was clearly the only issue in need of resolution. (See *Campaign* v. *Safeway Stores, Inc.* (1972) 29 Cal.App.3d 362 [104 Cal.Rptr. 752]; *Paul* v. *Williams* (1944) 64 Cal.App.2d 696 [149 P.2d 284]; *Pretzer* v. *California Transit Co.* (1930) 211 Cal. 202 [294 P. 382].) In the instant case, however, we cannot determine from the verdict whether the jury found for plaintiffs and against defendants Garner and Encinal Park, Inc. on plaintiffs' theory of strict liability, or negligence, or both. Because economic damages are only recoverable under plaintiffs' negligence cause of action, and not under strict products liability, we cannot determine whether an award of economic damages would have been proper under the theory upon which the jury held defendants liable. Therefore, we are compelled to remand for retrial with respect to the strict liability and negligence claims in their entirety.

III. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

## CONCLUSION

In summary, we find that the trial court erred by granting nonsuit against defendants Mattson and Connelly and by granting partial nonsuit against defendants Garner and Encinal Park, Inc. by limiting plaintiffs' recovery against them to physical damages only.

. . . . . . . . . . . . . . . . . . . . . . . . .*

Due to these errors, we reverse the judgment and remand for retrial in accordance with the views expressed in this opinion.

---

*See footnote 1, *ante,* page 409.

Each party to bear their own costs on appeal.

Rouse, J., and Smith, J., concurred.

A petition for a rehearing was denied September 14, 1984.